UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
**LUIS ESCOBAR**

                Petitioner,                              04 CV 169 (NG)

                                                                  ORDER

       v.

**DAVID MILLER, Superintendent,**
**Eastern Correctional Facility,**

                Respondent.
------------------------------------------------------------x

**GERSHON, United States District Judge:**

      Petitioner Luis Escobar, proceeding *pro se,* applies to this court for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he is being held in custody in violation of the Constitution and laws of the United States, pursuant to the judgment of a court of the State of New York. Respondent has moved to dismiss the petition as untimely on the ground that petitioner failed to commence this proceeding within the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244. Petitioner did not initially submit papers opposing respondent's motion; however, in response to this court's January 21, 2004 order, directing him to show cause why the petition should not be dismissed as time-barred, petitioner claims that he should be exempted from the AEDPA time restraints because of new evidence supporting his claim of actual innocence. For the reasons discussed below, petitioner's application is denied.

## BACKGROUND

      Petitioner was indicted on charges of murder, criminal possession of a weapon and criminal use of a firearm in connection with the shooting and killing of Guido Alvaro Isaza ("Isaza") in the men's restroom of a nightclub in Queens County on January 26, 1985.

The prosecution asserted that the petitioner shot Isaza because petitioner was a drug trafficker and Isaza was a cocaine-dealer who owed petitioner over $130,000.00. To support its case, the State offered the testimony of Veronica Hourigan ("Hourigan"), as well as several police officers who testified regarding the murder investigation and petitioner's subsequent arrest, and expert testimony regarding Isaza's gunshot wounds.

The evidence at the trial established that on the night of January 26, 1985, petitioner and Isaza were both present at Extasis nightclub in Queens County. Isaza was accompanied by Hourigan and his cousin, Humerto Gonzalez ("Gonzalez"). Hourigan later testified at trial to noticing petitioner drinking at the bar. Isaza went to the men's restroom and Hourigan heard noises that sounded like firecrackers. Hourigan then saw petitioner, who she testified was disguised in a moustache, exit the restroom holding a gun, which he fired twice back into the men's room. According to Hourigan, petitioner then returned to the bar, re-holstered his gun and finished drinking. Shortly thereafter, Isaza was found dead in the men's room.

At trial, defense counsel challenged Hourigan's testimony with that of Bernardo Alfonse Martinez ("Martinez"), a former manager of the nightclub who was also present that night. Martinez's testimony suggested that, at the time of the shooting, he saw a different individual exit the bathroom and fire shots into the bathroom. In addition, Patricia Jaramillo ("Jaramillo"), who was both a friend of Isaza and an acquaintance of petitioner, testified that, when she heard the shots, petitioner was sitting at her table, and not, as Hourigan claimed, firing a gun into the bathroom. Despite the testimony of these witnesses, the jury found petitioner guilty of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree on February 6, 1986.

At the close of trial, defense counsel moved to set aside the verdict pursuant to Section

330.30 of the New York Criminal Procedure Law on the ground that evidence either not available or not admitted into evidence at trial cast doubt on the jury's verdict. Specifically, defense counsel asserted that an affidavit, supplied by Nelson Lozano, an alleged eyewitness to the shooting, indicated that petitioner was not the individual who shot Isaza. Additionally, defense counsel asserted that the expert testimony of Dr. Louis Roh, which indicated that all shots had occurred within the bathroom, and not from outside as Hourigan had testified, was erroneously excluded at trial. The court denied the motion without a hearing and petitioner was sentenced to twenty-five years to life on the murder conviction and seven and one-half to fifteen years on the weapon possession charge on March 10, 1986. The Appellate Division unanimously affirmed petitioner's conviction in an order dated June 1, 1987. *People v. Escobar*, 131 A.D.2d 500 (2d Dept. 1987).

Petitioner then moved to appeal the judgment of conviction and the denial of his Section 330.30 motion to the Appellate Division, Second Department, arguing that: (1) the evidence against petitioner was legally insufficient to support his conviction; (2) the trial court erred in admitting evidence showing that petitioner was a drug trafficker; (3) the police lacked probable cause to arrest petitioner; (4) the identification should have been suppressed as the lineup was unduly suggestive; (5) prosecutorial misconduct during the prosecutor's summation and cross-examination of defense witnesses deprived petitioner of a fair trial; (6) the trial court's evidentiary rulings denied petitioner a fair trial; (7) the trial court erred in denying petitioner's request for a mistrial after the prosecutor elicited that petitioner told officers that his name was Lucho; (8) the trial court erred in denying petitioner's motion to set aside the verdict, and (9) petitioner's sentence was excessive. Thereafter, petitioner sought leave to appeal the Appellate Division's decision to the New York State Court of Appeals. This request was denied on August 21, 1987. *People v. Escobar*, 70 N.Y.2d 711 (1987).

3

Petitioner filed an application for a writ of error *coram nobis* in the Appellate Division, Second Department, alleging that he was denied effective assistance of counsel on his direct appeal. On May 15, 1992, the Appellate Division denied the application. On April 9, 1992, petitioner moved to vacate the judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law, on the grounds of newly discovered evidence proving his innocence and a violation of his constitutional rights to a fair trial through prosecutorial and police misconduct in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963), and *People v. Rosario*, 9 N.Y.2d 286 (1961). Specifically, petitioner offered an affidavit from Hourigan, recanting her previous trial testimony identifying him as Isaza's shooter. Petitioner also provided an affidavit from Isaza's cousin, Gonzalez, indicating that he was willing to testify that he saw someone other than petitioner exiting the bathroom with a gun at the time the shooting occurred. Petitioner's motion was denied in a memorandum and order of the Supreme Court of New York, Queens County (Leahy, J.S.C.) on November 25, 1992. The court found that Hourigan's recantation was patently incredible; the additional evidence was merely cumulative to other testimony at trial; and the *Brady* and *Rosario* claims were without merit. Petitioner sought leave to appeal, which the Appellate Division, Second Department denied on February 24, 1993.

Petitioner now argues that he is actually innocent of the crime for which he was convicted. To support this claim, he reasserts the arguments presented in his direct appeal, as well as those articulated in his Section 330.30 and Section 440.10 motions. Petitioner also asserts a new theory that the arresting officers had a motive to implicate petitioner in Isaza's murder because the officers had stolen seven million dollars in drug money from the apartment in which petitioner was arrested.

In addition, petitioner annexes the following supplemental materials to his application: (1)

an October 24, 1986 letter from Carlos Samper ("Samper"), to petitioner's former counsel, expressing his willingness to testify that he witnessed another man, identified as Carlos Rengifo, shoot Isaza at Extasis on January 25, 1985. (Ex. B112 to Petitioner's Aff.); (2) a September 23, 1994 letter from petitioner's former counsel indicating that he did not call Samper as a witness because Samper was incarcerated on another drug charge at the time of trial, and he felt that the witnesses who had testified at trial provided the same information and were more credible (Ex. B113 to Petitioner's Aff.); (3) an April 27, 2004 affidavit from Edgardo Bolanos ("Bolanos"), who was petitioner's fellow inmate at Eastern Correctional Facility, stating his willingness to testify that another man, identified as Carlos Vivas, had confessed to killing Isaza after an altercation in the men's bathroom at Extasis (Ex. B121 to Petitioner's Aff.); and (4) a 1988 excerpt from an article published in a Spanish-language newspaper which suggested that one of petitioner's arresting officers was corrupt and ultimately killed by his partners for allegedly cooperating in an investigation of police corruption and extortion. (Ex. B115-B118A to Petitioner's Aff.).

## DISCUSSION

On April 24, 1996, Congress enacted AEDPA, which among other things, amended 28 U.S.C. § 2244(d)(1) to provide a one-year limitation period for filing state habeas corpus petitions. The statute provides that the limitation period will run from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the

Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

Where, as here, (B) and (C) are not relevant, provisions (A) and (D) are left as the only bases for calculating the limitation period. Petitioner's conviction became final on November 21, 1987, ninety days after the New York Court of Appeals denied his request for leave to appeal and the last date on which he could have petitioned the United States Supreme Court for a writ of certiorari. *See Caspari v. Bohlen*, 510 U.S. 383 (1994); Supreme Court Rule 13. Since the judgment of conviction became final before April 24, 1996, the effective date of AEDPA, petitioner's time to file his habeas corpus petition under 28 U.S.C.§ 2244(d)(1)(A) expired on April 24, 1997. *See Ross v. Artuz*, 150 F.3d 97 (2d Cir. 1998). In addition, although AEDPA provides tolls for pending collateral attacks, here all of petitioner's state collateral attacks occurred prior to the effective date of AEDPA.

Petitioner does not dispute that his petition is untimely under 28 U.S.C.§ 2244(d)(1)(A). Instead, he principally argues that he is actually innocent of the crime of which he was convicted, and asserts an allegedly new claim and evidence to support this argument. Thus, the court looks to 28 U.S.C.§ 2244(d)(1)(D) as a basis for calculating the limitation period as to the alleged new claim, as well as to a potential actual innocence exception to the statute of limitations.

Where a habeas petitioner asserts actual innocence as a basis for excusing the AEDPA time restraints, a district court is to examine; (1) whether petitioner was reasonably diligent in pursuing his claim of actual innocence, (2) if he did not pursue the claim with reasonable diligence, whether the Constitution nonetheless requires an "actual innocence" exception to the AEDPA statute of limitations; (3) if petitioner did pursue the claim with reasonable diligence or if reasonable diligence

is unnecessary, does petitioner make a credible claim of actual innocence; and (4) if petitioner does make a credible claim of actual innocence, whether the Constitution requires an "actual innocence" exception to the AEDPA statute of limitations on federal habeas petitions. *See Whitley v. Senkowski*, 317 F.3d 223, 225-26 (2d Cir. 2003). Where a petitioner has offered no credible claim of actual innocence, the court need not reach the constitutional question. *See Lucidore v. New York State Div. of Parole*, 209 F.3d 107,114 (2d. Cir. 2000). A habeas petitioner demonstrates actual innocence if he offers "new, reliable evidence that was not presented at trial and show[s] that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Small v. Miller*, 2003 WL 22801332 at *3 (S.D.N.Y. November 25, 2003); *cf. House v. Bell*, 126 S.Ct. 2064, 2076-77 (2006) (analyzing a habeas petitioner's claim of actual innocence where petitioner had procedurally defaulted on state law claims).

As a threshold matter, petitioner has not shown that he exercised "due diligence" within the meaning of 28 U.S.C. 2244(d)(1)(D) or that he was "reasonably diligent," so as to invoke an actual innocence exception in bringing any of the purported "new" evidence before this court. The October 24, 1986 letter to petitioner's attorney, as well as the attorney's response, dated September 25, 1994, demonstrate that the evidence in the October 24th letter was available to both petitioner and his former counsel in advance of trial, and thus, could not be considered "new" by this court. Additionally, the 1988 excerpt from the article regarding the arresting officer's alleged corrupt activities has been publicly available for many years and was available for use in petitioner's state collateral motions to vacate, yet petitioner failed either to provide the article as evidence of the detective's corrupt motives, or allege any claim regarding the stolen drug money. Petitioner has provided no reason he did not submit earlier either the 1994 letter or the 1988 excerpt.

7

With respect to the April 27, 2004 affidavit of Edgar Bolanos ("Bolanos") which asserts that an individual named Carlos Rengifo killed Isaza and not petitioner, while it is "new," petitioner has made no showing of diligence in obtaining it. According to Bolanos' affidavit, Bolanos was aware of the information that Carlos Rengifo killed Isaza since 1986. Even if petitioner's meeting up with Bolanos in prison were sufficient to show his diligence, Bolanas' affidavit could not support habeas corpus relief.

The evidence proffered fails to establish petitioner's actual innocence, either for the purposes of avoiding the statute of limitations or for showing any right to habeas relief on the "new" claim of actual innocence.[1] Bolanos' affidavit contradicts the proposed testimony of Samper indicating that yet another man, Carlos Vivas, killed Isaza on that night. It is not disputed that both Carlos Rengifo and Carlos Vivas are deceased at this time. Such inconsistent testimony is insufficient to establish petitioner's actual innocence. In addition to being inconsistent, it is cumulative of evidence offered at trial, namely, the testimony of Martinez and Jaramillo that another man, and not petitioner, shot Isaza. Accordingly, this court is unable to conclude that, if now presented with the testimony of Bolanos — who was petitioner's fellow inmate and is likely less credible than the two witnesses presented at trial — a jury would more likely than not have reached a different verdict. Therefore, petitioner has not advanced a credible claim of actual innocence warranting an exemption from AEDPA's one-year statute of limitations, or , even if petitioner could pass the statute of limitations bar, relief from his conviction on a new claim of actual innocence.

---

[1] Petitioner argues that his actual innocence warrants an exception to the statute of limitations provided by AEDPA and that his actual innocence of the crime for which he was convicted entitles him to habeas relief. Even assuming that a freestanding claim of actual innocence would be recognized in a non-capital case, petitioner has not come near to meeting the "extraordinarily high" burden suggested in *Herrara v. Collins*, 506 U.S. 390 (1993). *See also House*, 126 S.Ct. at 2086-87.

8

## CONCLUSION

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. The Clerk of Court is directed to enter judgment consistent with this decision and to close the case.

**SO ORDERED.**

*/s/ Nina Gershon*
**Nina Gershon**
**United States District Judge**

**Dated: August 4, 2006**
      **Brooklyn, New York**